# Ewing *versus* Alcorn.

*Bills of Exception, Admissions in.— Title to Land under Statute of Limitations.—Notice of filing Depositions.— Verdict in Trespass, effect of on Ejectment for same Land.—Error in admitting Evidence, cured by withdrawal.— General Verdict in Ejectment good, where the Land is described in Præcipe.*

1. Where, on the trial of an ejectment, in the bill of exceptions tendered to the court below, the existence of a certain line on the ground was stated and admitted by the plaintiff in error, this court will not reverse, because the court below, in charging the jury, assumed the existence of the line as a fact in the case.

2. Where the assumed line was the south boundary of defendant's grantor, and the title claimed to the disputed tract below it, was that of twenty-one

[Ewing *v.* Alcorn.]

years' user as woodland, by cutting timber, tapping trees, and making sugar, but without other actual occupation in any part, a portion of the alleged southern boundary of the land thus claimed not being marked or defined in any way, it was *Held*, That the use was not such an actual possession and occupancy as would give title under the Statute of Limitations, the case being that of an adjoining owner with legal title and actual boundaries, trespassing occasionally upon his neighbour's land; and that his declarations, that he claimed the disputed tract, were not of any weight, unaccompanied by such an occupancy as the law requires to obtain title as against the real owner.

3. Under rules of court, providing that depositions taken in a cause shall not be read unless notice was given of their filing, it was not error to reject depositions of which no notice was given, on the trial of the cause in which they were taken.

4. Where the plaintiff in the ejectment had formerly brought an action of *trespass quare clausum fregit*, against several defendants, of whom the husband of the defendant in the ejectment was one, for trespassing upon the land claimed, and had recovered therein, the recovery is not conclusive in the action of ejectment, because the defendant was not a party to it.

5. A paper improperly admitted, during the trial, as the declaration of the former owner of defendant's title, that he did not claim the disputed tract, may be afterwards withdrawn by the court, from the consideration of the jury; and the error in such admission, if any, is cured by the withdrawal.

6. Where the *præcipe* in ejectment contains a sufficient description, a general finding for the plaintiff, with nominal damages, is referable thereto: hence, a verdict of a jury, finding " for the plaintiff with six cents damages," is good, where the *præcipe* is sufficiently descriptive, being in effect a finding of the issue in his favour.

ERROR to the Common Pleas of *Lawrence county*.

This was an action of ejectment, brought April 2d 1857, by Henry H. Alcorn against S. S. Ewing, for a tract of land in Pulaski township, described in the *præcipe*, as " bounded on the north by William Black, on the east by Mitcheltree, on the south by Leyde, formerly by Vanmetre, and west by John Gailey, containing twenty acres, more or less." While the case was pending in the Common Pleas, Mr. Ewing died, and his widow and administratrix, Elizabeth Ewing, was substituted.

The material facts of the case seem to be these: Nathaniel Bedford was, in May 1808, the patentee of two adjoining tracts of land in said township, known as " Bethlehem" and "Nazareth," each containing four hundred acres and allowance.

The description of the "Bethlehem" tract was as follows: Beginning at a maple, north two degrees west, two hundred and fourteen perches, by Charles Higby; north eighty-eight degrees east, three hundred and eighteen perches, to a hickory. Thence, by others, south, two hundred and fourteen perches, to an ash; thence, by George Davis, west, two hundred and eighteen perches, to the place of beginning.

The "Nazareth" tract lay on the north side of the former, and was thus described in the patent: Beginning at a post, thence by lands of A. Huntge, north, two degrees; west, two hundred and fourteen perches, to a post; thence, by land of John Wright,

[Ewing *v.* Alcorn.]

north, eighty-eight degrees; east, two hundred and eighteen perches, to a crab tree; thence, by other lands south, two degrees; east, two hundred and fourteen perches, to a hickory; thence, by John Price, south, eighty-eight-degrees; west, three hundred and eighteen perches, to place of beginning.

The plaintiff claimed title to part of the Bethlehem tract, under the following conveyances, viz.: On the 7th of July 1808, Bedford sold the whole tract to James Black. Subsequently, Black conveyed a portion of the north-western part of the tract to John Gailey, the extent of which was well defined by marks on the ground. On the 29th of December, Black also conveyed one hundred and fifty acres and allowance off the south-eastern part of the tract, to Jacob Vanmetre, who kept his north boundary line (one hundred and twenty-nine perches in length) enclosed with a fence ever since.

On the 2d of December 1826, Black sold all the land in the patent, except that conveyed to Gailey and Vanmetre, to John Shields, who sold to Charles Stewart, February 10th 1829, as two hundred acres. On the 8th of April 1831, Stewart conveyed the same to William Sheriff, who, on the 27th of April 1833, sold to George Leslie. By him it was sold, on the 27th of July 1841, to John Horner, from whom it was sold, under execution, to Thomas Hoge, who, on 28th of December 1855, conveyed to H. H. Alcorn, the plaintiff.

The defendant's title was as follows: On the 7th of July 1808, Bedford sold the Nazareth tract to Alexander McBirney, who, on the 7th of January 1824, conveyed two hundred acres and allowance off the eastern part, to Dr. John Mitcheltree. On the 6th of June 1842, Mitcheltree conveyed to one Shirk and S. S. Ewing, the defendant, one hundred and forty acres and allowance, being the south-east corner of the Nazareth tract, "beginning at a post at the north-west corner of said lot, by A. McBirney's heirs, north eighty-eight degrees east, one hundred and seventy perches, to a post; thence, by George Mitcheltree's heirs, south, two degrees; east, one hundred and thirty-eight perches, to a hickory; thence, by land of Jacob Vanmetre, south, eighty-eight degrees; west, one hundred and seventy perches, to a post; thence, by lands of Joseph and John Kerr, north, one hundred and twenty-eight perches, to beginning." There was evidence on the trial, that the hickory named as the north-east corner of the Bethlehem tract was about fifty rods north of the fence erected by Jacob Vanmetre, and that the line running west from the hickory was well marked, and corresponded with the north line of the tract sold to John Gailey; but the defendant offered testimony to show that while Mitcheltree was in possession of that portion of the Nazareth tract sold to him in 1821 and 1822, he claimed as far south as the Vanmetre

fence, alleging that it was his southern line, giving notice to the persons living on the Bethlehem tract of his claim, and threatening all persons trespassing on it. Defendant also proved, that the tenants of Mitcheltree had cleared a portion of the land between the line running from the hickory corner and the Vanmetre line, using the land in dispute as his woodland; that Shirk had improved and cultivated about thirty-two rods south of the line running from the hickory corner, and west as far as John Gailey's line, using the disputed land as his woodland; that S. S. Ewing, from the time he purchased in 1842, had possession, and used the cultivated and wood land, in connection with his other land, until he sold a portion of his farm in 1856, after which he erected a house on the part reserved and now in dispute, on which he lived until his death.

The defendant, under these facts, claimed that the southern corner of her tract was at the end of the Vanmetre line. There was no hickory of sufficient age at that point, but there was proof that there had been one about eighteen rods north of that line, which was the corner of a tract of Alexander Neal's land, which lay east of "Nazareth."

The leading point in the case, therefore, was the true location of the line between the Bethlehem and the Nazareth tract. If fifty rods north of John Vanmetre's fence, the defendant claimed that the clearing by Shirk south and west, as above stated, and the use of the woodland down to the Vanmetre fence, claiming it as the southern boundary line for a period over twenty-one years, protected her under the Statute of Limitations. To this defence, the plaintiff interposed the verdict of a jury in an action of trespass *quare clausum fregit* by him against S. S. Ewing, for cutting timber on the land in dispute, and which he averred was defended, on the title here set up.

On the trial, the defendant offered in evidence the deposition of John Shirk, taken August 23d 1860, and filed August 27th 1860; also the deposition of Dr. John Irwin, taken August 18th 1860, and filed August 27th 1860, which were objected to by the plaintiff, because notice of the filing was not given according to the rules of court.

The court below (AGNEW, P. J.) rejected the depositions, which was the subject of the first bill of exceptions.

After evidence of the title from Bedford to Ewing, the plaintiff offered a paper dated April 21st 1831, with proof that it was executed by McBirney, and delivered to John Gailey, on the day that it bears date, for the purpose of proving that McBirney, under whom the defendant held, never claimed as the southern boundary of the Nazareth tract, south of the line of John Gailey's land, but had recognised it as his southern line. The defendant objected to this, because the paper on its face was not given to

[Ewing *v.* Alcorn.]

any one, nor can its delivery to any one be shown by parol; that it was executed after the sale and delivery of the deed by McBirney to Mitcheltree, who was not present assenting to it, and was therefore the declaration of one out of possession against one in possession, claiming title.

The court received the paper as evidence of boundary, subject to the instruction of the court to disregard it, if they find, on the evidence, that the deed to Mitcheltree was delivered prior to the execution of the paper; which was the substance of the second bill of exceptions.

The defendant presented twelve points, on which the court was requested to charge the jury. The following only are material:—

6. That the evidence tends to prove the true dividing line of the original tracts Nazareth and Bethlehem, to have been from a point on the east side thereof, 32 rods north of Alexander Neal's Hickory corner, westwardly along the north line of the part of Bethlehem occupied by John Gailey, by a straight line to the west side of the tract.

7. That if the Vanmetre line was well defined and visible, and Dr. Mitcheltree came into possession of the south half of Nazareth in 1821, and then or soon after was claiming title in an open and hostile manner as far southwardly as the Vanmetre line, including not only the land sued for, but the strip 32 rods wide immediately north of it, and in pursuance of said claim, used and occupied the land to Vanmetre's line, as farmers usually occupy their woodland for firewood, building, fencing, and other farming timber; and gave notice of his claim to the then holder of Alcorn's title; and if that claim, and use, and occupation, have been kept up continually by Dr. Mitcheltree, and those claiming under him in a similar manner, for a period of 21 years before the bringing of this suit; and especially, further, if those holding under Dr. Mitcheltree, in pursuance of said claim, use, and occupation, cleared, cultivated, and fenced the greater portion of the said strip of 32 rods wide, and used and occupied the woodland (sued for in this suit), in the manner aforesaid, in connection with said strip so cleared, cultivated, and enclosed, that the plaintiff cannot recover.

10. That if the jury shall believe the true line of division between Nazareth and Bethlehem, to be the line running westwardly from Alexander Neal's Hickory corner and that of Dr. Mitcheltree, and those claiming title from him, claimed, used, and occupied the land sued for, as stated in defendant's 7th point, the defendant is not entitled to recover.

11. That a recovery in trespass, *quare clausum fregit*, is not conclusive of the title in ejectment.

12. That the defendant not having been a party to the

[Ewing v. Alcorn.]

action of trespass given in evidence, the recovery therein does not estop or conclude her in this ejectment. She may defeat plaintiff's recovery in this suit, notwithstanding such recovery in trespass.

The court below answered these points as follows:—

"Sixth point. This is true as a matter of fact; but as a matter of law we cannot answer, as the jury must pass upon evidence, and determine what is proved and what is not proved.

"Seventh point. The answer to this point depends on the finding of two facts, boundary and possession, as our answer must be in view of the evidence. If the extent of Dr. Mitcheltree's claim was defined by a line or by fences across the whole southern boundary of the land in dispute, so as to give his claim a definite extent, and to comprehend the disputed territory with his other land, and thereby cut off the plaintiff's land from it; and if he had cleared, and cultivated, or fenced in, a portion of the disputed tract, so as to be in the actual visible occupancy of the plaintiff's land within the claim, and definite boundary thus held to, and this claim and boundary existed unitedly for a period of twenty-one years before suit, the point is answered in the affirmative. But unless there was a complete boundary along the whole southern side of the land, so to define the claim on that side, and an actual, visible, notorious, and hostile possession, within the lines of the disputed tract, the Statute of Limitations will not give title to the woodland of the plaintiff.

"It is not sufficient that Vanmetre's line extends along a portion of the land, and that Mitcheltree claimed to it. He must do more. He must oust the plaintiff's possession by a well known boundary of some sort from Vanmetre's land to Gailey's, otherwise the plaintiff, who claimed title for the residue of the tract not sold to Vanmetre and Gailey, is not cut off by an imaginary boundary, having no actual existence on the ground. He and those under whom he claims being in possession of their land, were constructively in possession throughout their own boundaries until ousted by some visible and notorious act upon their land, and cut off from that part by a claim having an actual and definite extent.

"Tenth point. This point is answered in the affirmative, subject to the same restrictions contained in the answer to the 7th point.

"Eleventh point. This proposition is a general one, and as such is answered in the affirmative. The point makes no reference to the fact whether title was set up in the action of trespass. If set up and claimed in the action, that action is conclusive against those who were parties to it.

"Twelfth point. The defendant is not a party on the record, and unless there is evidence to satisfy the jury, that the defendant

4 WR.—32

was the actual party in interest in the suit, and defended it, she would not be affected by it."

There was a verdict and judgment in favour of plaintiff generally, whereupon the case was removed into this court by defendant, for whom the following errors were assigned:—

1. The court erred in rejecting the deposition of John Shirk and Dr. John Irwin, for the reasons contained in the first bill of exceptions to evidence.

2. In receiving the paper purporting to be executed by Alexander McBurney, dated 21st April 1831, and delivered to John Gailey, as contained in the bill of exceptions to evidence for the purpose alleged in the same.

3. In their general charge to the jury in using these words:—" That the deed from John Mitcheltree to S. S. Ewing, dated June 2d 1842, extended to another hickory corner, and line lying 31½ perches south of the said northern line of the Bethlehem tract. That this hickory and the line therefrom, were well known and marked upon the ground. That the Vanmetre line, viz. the northern boundary of his tract was a well known line of fence upon the ground, being at a distance of 18 perches south of the hickory and line therefrom, known as the southern boundary in the deed from Mitcheltree to Ewing, leaving between them the land in dispute for which this ejectment was brought."

4. In their answer to the 7th, 10th, 11th, and 12th points.

5. They erred in their general charge, as follows:—

" If the jury then are satisfied, that the northern boundary of the Bethlehem tract is the continuation of John Gailey's line to the living hickory, 32 perches north of the dead hickory at the gate, that line is the boundary of Dr. Mitcheltree's deed from McBurney. The case then will turn on the Statute of Limitations. Even if his deed extended to the line, west from the dead hickory at the gate called Neal's corner, as the land in dispute lies south of this line, the case will still turn on the Statute of Limitations. But there is this difference—if the latter or southerly line be the true one, the clearing and cultivation on the 31½ or 32 perch part, as it is called, between the two hickories, was done on Mitcheltree's own land, and would not be such an actual occupancy of the part in dispute, as would give title under the Statute of Limitations. But if the line from the northerly, or live hickory, be the true line, then the clearing and cultivation on the 32 perch piece would be on the plaintiff's tract called Bethlehem, and if supported by a definite boundary on the south side of the disputed part, might give title under the Statute of Limitations.

" In order to support the defence under the Statute of Limitations, the jury must be satisfied, that for a period of twenty-one years before this suit was brought, the defendant, and those

[Ewing v. Alcorn.]

under whom she claims, had an actual possession within the boundary of the plaintiff's tract, by clearing, cultivation, or enclosure, and continued the same in a visible, hostile, and notorious manner, peaceably and without interruption, for a full period of twenty-one years, claiming to known and visible boundaries upon the ground, for the whole period of the same twenty-one years. The plaintiff's land lay between Vanmetre's land and Gailey's, and in order to cut it in two, and cut off the plaintiff and those whose title he has from that part lying north of Vanmetre's north-west corner, the defendant must satisfy the jury that this gap was closed by a known, visible, and fixed boundary, either by a fence or a line marked on the ground. Otherwise the plaintiff's title is not to be strangled at this point by an imaginary boundary, no matter what claim may be made. It is not the claim of the hostile parties, but it is this claim as marked off or defined by a line or boundary, which cuts off the owner, and excludes him from that legal possession of his adjoining woodland, which the law casts upon the owner in possession.

"An actual possession is one that is intentional and visible. The parties must enter upon the land in fact, and take an actual occupancy of it, by clearing, cultivating, or fencing, a visible portion of the land, of such a character as to challenge the notice and attention of the owner, and to put him on his guard. The mere cutting of timber, tapping trees, and making sugar, or any other acts of a fugitive character, are not in themselves an actual possession. They are but a succession of trespasses, and cannot alone give title, under the Statute of Limitations. They only have this effect when connected with an actual possession, such as we have described. Then these may give effect to the party's claim to the woodland outside of his actual possession, but contained within the boundary to which he claims, but not otherwise:" and

6. In entering judgment on the verdict, which was void for uncertainty.

The case was argued here by *L. L. McGuffin*, for plaintiff in error.

Defendant's counsel furnished no printed argument.

The opinion of the court was delivered, November 29th 1861, by

THOMPSON, J.—In the bill of exception tendered to the president of the Common Pleas by the plaintiff in error, to the admission in evidence of a certain paper purporting to be the act of Alexander McBurney, it is stated and admitted that there was a line on the ground running west from the most southerly

[Ewing *v.* Alcorn.]

of the two hickory trees, spoken of one as the south-east corner
of the Nazareth tract, and the other as the south-east corner of
the land conveyed by Dr. Mitcheltree to S. S. Ewing. The
learned judge cannot be blamed, therefore, for assuming such a
line. Indeed, the whole testimony proceeds upon this as a fixed
fact, and consequently there was no error in assuming it in the
charge, and this disposes of the exception to the charge for so
doing.

But the existence of this line was the key to the solution of
the whole difficulty in the case. It was the south boundary of
the Ewing purchase, and to land south of it Ewing could only
acquire title, as the learned judge said, by residence or clearing
and cultivation. If he had gone upon it and cleared a field, and
defined his boundaries, his occupancy thus would have drawn to
it the possession of the woodland within the boundary, even as
against the owner in the actual occupancy of other portions of
the land. That was ruled by this court in Ament's Ex'ors. *v.* Wolf,
9 Casey 331. But there must be a *pedis possessio* of the land.
This possession being actual, adverse, notorious, hostile, and con-
tinued for twenty-one years, would give title by the Statute of
Limitations. Here this sort of possession did not exist. It was
simply the case of an adjoining owner, with actual boundaries
and legal title, trespassing occasionally, and but seldom at that,
until lately, on his neighbour's woodland, by the occasional
cutting a stick of timber thereon. His occasional declarations
that he claimed it was of no avail, unaccompanied by actual
occupancy in the manner stated, and as absolutely essential to
the acquisition of title by the statute. Under circumstances
even of this kind, an actual extension of the line from the Van-
metre fence west was an essential element to the ouster of the
occupying owner of the tract. Without this, even an occupancy
by clearing and cultivating for twenty-one years would only have
availed to the extent of the enclosed territory. See Nepean *v.*
Doe, 2 Smith's Lead. Cas., 5th ed., p. 563, where the law is well
stated. We see no error whatever in the law, as laid down by
the learned judge in his charge.

The rejection of the depositions of John Shock and Dr. Irwin
was in accordance with the rules of the court on the subject, and
proper, and there was no error in that.

We think the plaintiff in error had nothing to complain of in
the answers of the court to her eleventh point. It was affirmed,
and it was not said that the action of trespass thereon was con-
clusive in this ejectment. Indeed, nothing was predicated of this
evidence throughout the entire trial.

The error assigned to the admission of the Alexander McBur-
ney paper was cured by its full and entire withdrawal from the
consideration of the jury in the general charge. A paper such
as this was, might undoubtedly be so wholly withdrawn as not to

[Ewing v. Alcorn.]

prejudice the party against whom it was admitted.   The rule on this subject may be found in The Delaware and Hudson Canal Company v. Harlan, 7 Casey 193.

The last assignment of error is to the entry of judgment on the verdict.   The objection is, that it is uncertain.   But we do not esteem it so.  The *præcipe* contains a sufficient description, and when that is the case, a general finding for the plaintiff, with nominal damages, is referable thereto.  It stands in lieu of a *narr.*, and that and the plea of "not guilty" forms the issue between the parties.   See 12th section of the Act of 21st March 1806.   A general finding for the plaintiff is a finding of the issue for him.   If it is sufficiently descriptive, therefore, the finding will be good, and as the judgment has reference to the issue, it will be sustainable by it.   A careful examination satisfies us that this case was well tried below, and the

Judgment is affirmed.