## Pierce *v.* Barney, Appellant.

*Statute of limitations—Adverse possession—Vendor and vendee.*

A vendor of land in possession does not hold adversely to his vendee, until he does some unequivocal act, the knowledge of which is brought home to his vendee tending to show that he held the premises adversely to the latter.

*Statute of limitations—Adverse possession—Minerals.*

A person who secretly and clandestinely enters upon coal through an opening in land other than that in which the coal is situated, cannot by any continuous mining of the coal through such opening acquire title by adverse possession against the owner. Such an entry will confer no right on the wrongdoer until his entry is, or by the exercise of due diligence might be, discovered by the owner.

*Appeals—Assignment of errors—Refusal of nonsuit.*

The refusal to grant a nonsuit is not the subject of review on appeal.

Argued April 11, 1904. Appeal, No. 102, Jan. T., 1903, by defendants, from judgment of C. P. Luzerne Co., Oct. T., 1900, No. 1157, on verdict for plaintiff in case of James B. Pierce and John J. Shonk v. George Barney et al. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Ejectment for land in Plymouth township. Before WHEATON, J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for the plaintiffs.

Verdict and judgment for plaintiffs.   Defendants appealed.

*Errors assigned* among others were (1) refusal of nonsuit; (4) in giving binding instructions for plaintiff.

*W. H. Hines*, with him *E. A. Lynch*, for appellants.—The statute of limitations runs in favor of a grantor in a general warranty deed, who refuses to deliver possession to the vendee and remains for the statutory period in open, continuous and adverse possession of land : Milnes v. Van Gilder, 197 Pa. 347.

In determining the sufficiency of an adverse possession, much depends upon the character and situation of the land in question, the purposes for which it is adapted and for which it is used : Sedgwick & Wait on Trial of Title to Land, 574; Lackawanna Iron & Coal Co. v. Fales, 55 Pa. 90; Douglas v. Irvine, 126 Pa. 643 ; Thompson v. P. & R. Coal & Iron Co., 133 Pa. 46 ; Mercer v. Watson, 1 Watts, 330 ; Hasson v. Klee, 168 Pa. 510.

*J. Q. Creveling*, with him *D. L. Creveling* and *C. W. McAlarney*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 9, 1904:

In his charge to the jury, the learned trial judge discussed all the questions of fact and law raised in this case and fully vindicated the correctness of his conclusions.   There was no question of fact for the jury, and, as the law applicable to the case was against the defendants, the court very properly directed a verdict for the plaintiffs.

As clearly demonstrated by the learned judge in his charge, the plaintiff established on the trial of the cause a complete paper title to the premises in dispute.   To meet and overthrow this title the defendants attempted to show title in themselves to the land by adverse possession.   The sufficiency of the evidence entitling the defendants to have this question submitted to the jury is, as stated by their counsel, the question for consideration on this appeal.   Charles Barney conveyed to Wadsworth in August, 1829.   On April 24, 1830, he conveyed to John Bennett the one half of the coal under lots 15 and

16, excepting therefrom the two acres conveyed to Wadsworth; and in August, 1832, he conveyed the other half of the coal under the lots to Henderson Gaylord, "excepting and reserving the two acres heretofore conveyed by the grantor to Tertius Wadsworth." In each of these deeds, it will be observed, there is a clear and distinct recognition of Wadsworth's title to the premises in dispute. Charles Barney died in 1846, fourteen years after he had executed and delivered the Gaylord deed and hence, as observed by the trial judge, "he could not have acquired title by adverse possession during his lifetime no matter what the character of his possession was."

. Barney was Wadsworth's vendor and his possession of the premises was Wadsworth's possession until Barney did some unequivocal act, the knowledge of which was brought home to his vendee, tending to show that he held the premises adversely to Wadsworth : Ingles v. Ingles, 150 Pa. 397 : Olwine v. Holman, 23 Pa. 279. There was nothing in the evidence and no competent testimony was offered on the trial that would warrant the jury in finding any acts by Barney hostile to Wadsworth's title, nor indicating his intention to hold the premises against his vendee. Nor can appellants sustain their title by the alleged adverse possession of Henry Barney, who held lots 15 and 16 as devisee under the will of his father, Charles Barney. The acts of ownership exercised by Henry Barney over the two acres of land in dispute, alleged to be adverse and hostile to the possession of the appellees' predecessors in title, are clearly insufficient, as pointed out by the trial judge, to sustain a title by adverse possession for the length of time required by the statute. Not only is this true, but like his father, Henry Barney made a distinct recognition of the Wadsworth title in the grant of his interest in lots 15 and 16 by deed dated April 22, 1867, by "reserving and excepting two acres sold by Charles Barney, the father, to Tertius Wadsworth by deed dated 6th of August, 1829, recorded in deed book No. 26, p. 271."

It is further contended by the appellants that Thomas Appleton acquired title to the premises in dispute by adverse and hostile possession for a period of time more than twenty-one years immediately prior to the bringing of this suit. But the character of his possession was not such as to sustain this contention. He had a scrambling, if any, possession of the sur-

face.  He and his wife testify that he began to mine coal for his own use in the old Wadsworth coal beds in the winter of 1874, and continued the mining for a short period each year till this suit was brought, except during the years 1876 and 1879.  There was no opening to this coal through the surface of the two acre tract, and Appleton obtained access to it for mining purposes, as he testifies, through a drift or tunnel, the mouth of which was a small opening on the side of a ravine more than 300 feet distant and on the lands of other parties. There was coal on both sides of this drift from its mouth to the premises in dispute.

He who successfully defends his title to land by adverse possession must show that the possession was actual, continued, visible, notorious, distinct and hostile for the space of twenty-one years: Hawk v. Senseman, 6 S. & R. 21; Mercer v. Watson, 1 Watts, 330.  He must keep his flag flying in a visible and hostile manner: Plummer v. Hillside Coal & Iron Co., 160 Pa. 483.  Appleton's possession of this coal, according to his own testimony, was neither open, visible nor notorious, such as is required in adverse possession to establish a valid title to land.  His access to the coal was obtained through a small opening into a mine on the adjacent premises and several hundred feet distant from the land of the appellees.  The latter, therefore, had no reason to infer or believe he was entering upon their premises or had any intention of mining or removing the coal under the two acres of land.  On the contrary, the only reasonable inference from his action was that his purpose in entering the mine on the adjacent premises was to remove the coal from that mine, and that he confined his mining operations within the territorial limits of the mine which he entered.  His manner of entering the appellees' premises was, therefore, neither open, visible nor notorious, and hence was not of such a character as would suggest to the appellees that their possession of the coal under the land was being invaded by an adverse and hostile claimant.  Such entry was covert and clandestine, and gave no notice to the appellees of a hostile claim to their premises, nor put them upon inquiry as to whether their coal was being mined by Appleton.  There was nothing in Appleton's conduct that would lead the appellees to believe that he intended to invade their premises and remove their coal.  In Delaware

& Hudson Canal Co. v. Hughes, 183 Pa. 66, WILLIAMS, J., delivering the opinion uses the following language pertinent to the case in hand : " If he would acquire any part of the mineral he must make his entry upon, and maintain his possession within, the limits of the mineral estate, for the requisite period of time in an open, notorious, exclusive and continuous manner. A covert or clandestine entry will not do. Such an entry will confer no right on the wrongdoer until his entry is, or by the exercise of due diligence might be, discovered by the owner. Until then the owner cannot know that his possession has been invaded. Until he has, or ought to have, such knowledge he is not called upon to act, for he does not know that action in the premises is necessary, and the law does not require absurd or impossible things of anyone. Possession to be adverse must be open as well as continuous."

The refusal to grant a nonsuit is not the subject of review on appeal, as we have repeatedly decided, and hence the first assignment need not be considered.

The judgment is affirmed.