Owens et al., Appellants, *v.* Peters et al.

Argued March 9, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*William L. Hicks,* with him *John W. Newlin,* for appellants.

*Samuel H. Jubelirer* and *Bernard Jubelirer,* for appellees, submitted a brief.

OPINION BY KELLER, P. J., April 16, 1937:

This was an action of ejectment for a tract of land of about half an acre in Snyder Township, Blair County, lying between the public road leading from Tyrone to Birmingham and the Juniata River. It was part of a larger tract known as No. 86 on Noll's map of Tyrone Forges land, through which the public road aforesaid ran, and the tract or lot in suit was unimproved land south of the road, sloping somewhat steeply to the river.

The entire tract (No. 86) had been conveyed by G. Lloyd Owens and wife to Jacob H. Peters by deed dated July 24, 1894, and duly recorded. The said Jacob H. Peters and wife by deed dated September 3, 1902, and recorded the next day, re-conveyed the half-acre lot in suit to G. L. Owens. G. L. Owens, the grantee in this deed, died on January 9, 1906, intestate, leaving to survive him, a widow, Ella R. Owens, and three children, Robert W. Owens, Louise Owens Franciscus and Gilbert Lloyd Owens, the plaintiffs in this action.

The defendants, William H. Peters and George J. Peters are sons of the said Jacob H. Peters, the grantor in the deed to G. L. Owens. They claimed title to the lot through the adverse possession of their father and by a deed from him and his wife to them for a larger tract, but embracing the land in suit, dated July 20, 1926, recorded July 22, 1926.

This action in ejectment was brought on June 11, 1935 to recover possession of the land, and for mesne profits.

Both parties claimed from the same source of title, Jacob H. Peters; the plaintiffs as heirs of G. L. Owens, to whom the common grantor first conveyed it in 1902; the defendants by later deed (1926) from the common grantor, who was dead when this action was brought. To give the later deed priority over the earlier recorded deed to Owens, defendants averred that title had been acquired by their father—the common grantor—subsequent to his conveyance to Owens, by adverse possession.

While a grantor may acquire title by adverse possession to land which he had previously conveyed away by deed, it is the established rule in this Commonwealth that such adverse possession will not begin to run in his favor as against his grantee until he clearly and unequivocally brings home to the latter

notice of his intention to hold the land in hostility to his deed. "A vendor, after conveyance and before delivery of possession, is to be regarded as a trustee for the vendee, so far as regards possession. Just as he was a trustee of the title before conveyance. If he wishes to change the character of the possession he must manifest his intention by some act of hostility to the title of his vendee, plainly indicating to the latter the intention to deny his right and to hold adversely to it": *Olwine v. Holman,* 23 Pa. 279, 284, 285; knowledge must be brought home to the vendee of some unequivocal act by the vendor tending to show that he holds possession adversely: *Ingles v. Ingles,* 150 Pa. 397, 401, 24 A. 677; *Connor v. Bell,* 152 Pa. 444, 25 A. 802; *Hads v. Tiernan,* 213 Pa. 44, 46, 62 A. 172; *Pierce v. Barney,* 209 Pa. 132, 58 A. 152. In order that the grantor may acquire a good and valid title as against his grantee by adverse possession, he must prove that, after clearly manifesting to the grantee his intention to hold possession of the land adversely to his grant and in hostility to his deed, he had actual, continued, uninterrupted, visible, notorious, distinct and hostile possession for twenty-one years thereafter: *Hawk v. Senseman,* 6 S. & R. 21, 23; *Sorber v. Willing,* 10 Watts 141; *Martin v. Jackson,* 27 Pa. 504, 510. Judged by this standard the defendants failed to meet the burden resting on them (*Boyer v. Lengel,* 224 Pa. 357, 73 A. 323) and a verdict for the plaintiffs for the land should have been directed by the court.

As the action in ejectment was brought June 11, 1935, the defendants had to prove some clear manifestation by their father of his intent to hold possession of the land in hostility to his deed of conveyance, brought home to the grantee or his heirs, and open, notorious, hostile and adverse possession thereafter

reaching back to June 11, 1914, and continuing uninterruptedly since that date.

There was evidence that in 1903 ,and 1904 Jacob H. Peters cultivated a garden patch on the small strip of arable land next to the river—but not after that *(Union Canal Co. v. Young,* 1 Wharton 410, 426); that during the period from 1902 to 1906 Jacob H. Peters pastured his cows on this lot; See *Wheeler & West v. Winn,* 53 Pa. 122, 130, 131) and that he did this from time to time, but not uninterruptedly, in later years *(Sorber v. Willing,* 10 Watts 141; *Washabaugh v. Entriken,* 34 Pa. 74, 77, 79). There was testimony that in 1915 persons began dumping refuse and trash on the lot, and that Peters or members of his family supervised this or gave permission to do this, in order to fill up and level off the sharp slope or declivity to the river, and that ·this continued from time to time until several years before ,suit, when on complaint of certain local authorities Robert W. Owens put up a notice forbidding it. This did not amount to the actual and exclusive possession required to give title by adverse possession.

In 1919 a bill-board was placed on the lot by an outdoor advertising firm under lease with Jacob H. Peters, and since 1926 bill-boards have been maintained on the land under contracts or leases with Jacob H. Peters or the defendants. The defendants, have received rentals from this source, since 1928-1929, amounting to $702. They have also built since 1927 a shed and erected a gasoline pump for supplying gasoline to travelers on the highway. Having regard to the nature and character of this lot, these uses might be considered manifestations of open, notorious and hostile possession, *(Hood v. Hood,* 2 Grant 229, 237) but they go back only to 1919, not to 1914, and the evidence fails to show that the use of the bill-boards was continued from 1919 to 1926.

It was shown that in the year 1903 Jacob H. Peters executed a mortgage to Improvement Building & Loan Association of Tyrone in the amount of $1000 covering the entire tract (No. 86) which was conveyed to him by G. L. Owens, including the lot in suit; that this was paid off, and on February 7, 1912 Jacob H. Peters executed a mortgage for $800 to Improvement Building & Loan Association covering the same entire tract (No. 86). But there was no evidence in the case showing or tending to show that notice of the execution and recording of the 1903 mortgage was brought home to his grantee, G. L. Owens, or that notice of the 1912 mortgage was ever given his heirs, these plaintiffs.

While the recording of a mortgage is notice to all persons who are visited with the duty of examining the records for conveyances and liens thereafter, there is no duty resting on an owner of real estate to examine the records for mortgages or conveyances made by his grantor after the conveyance to him, and the mere giving and recording of such mortgage, without more, does not amount to notice to him. It may have been a hostile act or it may have been only a mistake of the scrivener, who prepared the mortgage, without examining the records for adverse conveyances. But if intended as a hostile act the mere giving and recording of the mortgage, without bringing notice or knowledge of it to the grantee, would not amount to the clear and unequivocal manifestation of hostile possession required of a grantor on which to found a claim for adverse possession against his grantee.

In any event we have seen that it was not supported by possession that was actual, visible, notorious, distinct, hostile, continuous and uninterrupted; that adverse possession, within the contemplation of the law, did not go back beyond 1919, and hence the burden resting on the defendants to prove adverse possession by their predecessor in title from June 11, 1914, was

not met: *Hole v. Rittenhouse,* 37 Pa. 116; *Ewing v. Alcorn,* 40 Pa. 492; *Johns v. Johns,* 244 Pa. 48, 55, 90 A. 535; *Parks v. Penna. R. R.* 301 Pa. 475, 483, 152 A. 682; *Wheeler & West v. Winn,* 53 Pa. 122, 131; *Boyer v. Lengel,* 224 Pa. 357, 73 A. 323. The payment of taxes on the whole tract (No. 86) by Jacob H. Peters, after his deed to Owens in 1902, did not give him title to the tract in suit as against his grantee: *Union Canal Co. v. Young,* supra, p. 426; *Sorber v. Willing,* supra. Declarations made by Jacob H. Peters to third persons after his conveyance to Owens in 1902, claiming title to the lot conveyed away by him were not admissible, unless made in the presence of Owens: *Ingles v. Ingles,* 150 Pa. 397, 399, 24 A. 677.

The case was submitted to the jury, which rendered a verdict in favor of the plaintiffs for the land in suit and awarded them $702 for mesne profits.

The court subsequently made an order granting a new trial unless the plaintiffs remitted the award for mesne profits in the verdict. Plaintiffs appealed.

The reason given by the court for the above action was that one of the plaintiffs, "Mrs. Ella R. Owens, in company with the daughter, Louise Owens Franciscus, informed the Court, before leaving for their home after the verdict had been received, that she would not accept the sum of $702 awarded as mesne profits."

No release of the mesne profits was executed by the plaintiffs, and Mrs. Owens had no valid authority to speak for her co-heirs and, apparently, she subsequently repented of her hasty remark to the trial judge. It furnished no legal basis for striking off or eliminating the award for mesne profits, based on the rents received by the defendants, the amounts of which were not disputed.

While ordinarily an appellate court will not reverse the action of a lower court in granting a new

trial, it will do so where binding instructions should have been given as matter of law for the party in whose favor the verdict was rendered: *Walters v. Federal Life Ins. Co.*, 320 Pa. 588, 184 A. 25; *Petkov v. Metropolitan Life Ins. Co.* 321 Pa. 14, 183 A. 46; *Fornelli v. Penna. R. R.*, 309 Pa. 365, 164 A. 54.

On the evidence in this record the plaintiffs were entitled to binding instructions in their favor, on the main question. The verdict as to mesne profits was fully supported by the evidence. A verdict for a less amount would have been against the undisputed testimony. The reason given by the court for eliminating this part of the verdict furnished no legal ground for such action. The granting of a new trial in such circumstances was an abuse of discretion.

Order reversed and judgment directed to be entered on the verdict.