## Young v. Pace, et al.

(Decided November 16, 1911.)

Appeal from Leslie Circuit Court.

Action to Quiet Title—Possession.—In an action to quiet title, where the plaintiff exhibited a perfect title, and his proof showed that he was in the actual, adverse possession thereof at the time he instituted the suit, the judgment should have been for him, the title of appellees resting solely upon a claim of adverse holding, their defense failed for the reason that they did not show the property claimed by them to be surrounded by a well defined or marked boundary.

CLEON K. CALVERT for appellant.

J. M. BICKNELL for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

William Young instituted a suit in the Leslie Circuit Court against Robert Pace, and others, in which he sought to have his title to a tract of land containing one hundred acres quieted. The defendants denied that plaintiff was the owner of the land and asserted title in themselves. Upon final hearing the trial court dismissed his petition, and from that judgment he prosecutes this appeal.

Plaintiff exhibited a perfect title to the land in controversy, and his proof shows that he was in the actual possession thereof at the time he instituted the suit, and unless the defendants proved a superior title, plaintiff

should have been granted the relief sought. The defendants' claim is not based upon a paper title, for they have none antedating 1895; but it is claimed for them that they and those under whom they hold, had been in the actual, adverse, open, notorious and peaceable possession of this land for more than fifteen years before the patent therefor was issued to appellant's vendor, Maggard. Hence, the only question which need be considered on this appeal is, does the evidence support this claim of adverse holding?

In order to support a title by adverse holding, three facts must be established: First, the possession must have been continuous, actual, open, notorious and peaceable for at least fifteen years; second, the exterior boundary lines of the land so claimed must be well defined, i. e., either actually enclosed or so marked that the land is susceptible of being identified by its description; and third, the possession must have been of such a character and extent as to exclude the idea that the right to possession was in anyone else.

It is most earnestly insisted for appellant that appellee's proof wholly failed to establish either the first or second of these elements necessary to make out a case of adverse possession. As to the first proposition, while the evidence is far from satisfactory, we would not feel warranted in disturbing the finding of the Chancellor to the effect that those under whom appellees claim had been in the open, adverse, notorious, continuous and peaceable possession of some of the property described in their answer, for it is shown that there was a dwelling erected on a portion of this land many years ago, and it is testified to by one witness, somewhat vaguely, it is true, that for a great number of years prior to 1890 this dwelling was occupied, while another witness testifies that there were periods during that time when the dwelling was vacant. But considering all the testimony, we would not feel warranted in holding that the evidence does not support the finding of the chancellor upon this point. The dwelling referred to is not upon that portion of the land claimed by appellees which is in dispute. It is not within the lap. Most of the land in dispute is woodland. It has not been settled upon. But very little of it is cleared, and that, the proof shows, has been recently cleared.

Appellees, in their pleading, describe the land claimed by them, as follows:

"Lying on the waters of Flackey Creek, waters of Cutshin Creek, waters of the Middle Fork of the Kentucky River, and bounded as follows, to-wit:

"First tract: Beginning at a standing rock below where said Maggard lived in the year 1895, marked 'N'—thence straight up the hill on the right hand side of the branch as you go up same, to the top of the mountain—thence running up the top of the mountain to a point; thence down said point to a sycamore tree at the lower end of a little bottom below Hiram Lewis'; thence down the branch about four poles to the mouth of a little drain that pours over a rock on the left hand side of said Flackey; thence straight up said drain to the top of the point; thence with the drain of the hollow around with the top of the mountain to the beginning, containing 100 acres, more or less.

"Second tract: Beginning on a large rock marked 'N,' same as beginning corner of tract No. 1, above mentioned; thence straight up the point near the fence with a marked line which was made by said Nantz and A. J. Maggard, to the top of the ridge, being all the land said John Nantz held on the 2nd day of July, 1895, from said marked line up said creek."

The evidence gives to this land no more definite description or boundary than that set out in the pleading. The exterior lines are not fenced or marked, i. e., blazed. But it is claimed by appellees that it is surrounded by natural objects, to-wit: The standing rock, the top of the mountain, a sycamore tree at the end of a little bottom below Hiram Lewis' residence, the mouth of a small drain which pours over a rock on the left hand side of Flackey Creek, etc. We are cited to no authority which has gone so far as to hold that a description of this character was sufficient to convey title, much less to support a claim of adverse possession. The only point that is described with certainty is the beginning point. The next call from the standing rock is "straight up the hill on the right hand side of the branch as you go up same, to the top of the mountain." How far from the branch is not shown; or how far the line runs to the top of the mountain, or in what direction, is all left open, uncertain and undetermined. But having reached the top of the mountain at some point, it is claimed the line runs along the top of the mountain to a point. Where? How far? The call, after having reached this point, then is

"down said point to a sycamore tree at the lower end of a little bottom below Hiram Lewis'." This is very vague and indefinite. It is not stated that the sycamore tree is marked or recognized as a corner tree, or where in the little bottom it stands, or that there are not other little bottoms in that same locality with sycamore trees in them, or other sycamore trees in the same bottom. But, having reached this point, the next call is "thence down the branch about four poles to the mouth of a little drain that pours over a rock on the left hand side of said Flackey." How many little drains there are in that locality that pour over a rock into little Flackey from the left hand side is not stated, but if there should be more than one it would be a difficult matter to locate this line and point. Accepting it, however, as fixed, the next call is "thence straight up said drain to the top of the point." What point is not stated. But having reached the top of the point, the direction is "thence with the drain of the hollow around with the top of the mountain to the beginning." This is, in our opinion, not a well defined or marked exterior boundary. There is nothing, so far as the record shows, in its description that would put any one upon notice that appellees were claiming the land within these lines, or any part of it. They might with as much propriety have stood at the door of their residence and said, "We claim as far as we can see, all of this valley in front of us, from the stone on our right to the mountain on our left," so as to include all the land to the mountain tops, and the description would have been much more definite and certain than that which is given in the pleadings.

In the recent case of Northern Coal & Coke Co. v. Vermillion, 140 Ky., 475, this court, speaking through Judge Hobson, said of a description similar to that under consideration:

"He had no marked or well defined boundary and no open or notorious possession that could ripen into title of any land within the senior patent. We, therefore, conclude that the proof showed no title in the plaintiff to any land within the Vermillion survey."

And in the case of White v. McNabb, 140 Ky., 828, in holding that a claimant, in order to support a title by adverse holding must show that the property claimed had been held to a well defined, exterior boundary line for the requisite length of time, the court said:

"It is not shown that appellant's father, Isaac Mc-

Nabb, entered under a deed, patent, title bond or other instrument of writing by which the extent of his possession could be determined; nor is it shown that he marked out a well defined boundary around the tract of land which is claimed; or that the land in controversy was included within a marked boundary.''

The principle announced in this latter case is most applicable to the case at bar. Appellees claim under no paper title. The eldest of the deeds which they exhibit was made in 1895, or five years after appellant procures his patent. Their title is rested solely upon their claim of adverse holding, and in order to establish such holding it is absolutely essential that the property claimed by them should have been surrounded by a well defined or marked line. The description given in appellees' pleading and proof being totally inadequate to meet this necessary condition prerequisite to the establishment of title by adverse holding, the chancellor should have entered a judgment granting appellant the relief sought.

The judgment is reversed and cause remanded, with instructions to enter a judgment quieting the title of appellant to the land described in his patent and set up in his pleading.