## Stearns Coal & Lumber Co., et al. v. Boyatt, et al.

(Decided January 26, 1916.)

### Appeal from McCreary Circuit Court.

1. Adverse Possession—Character of Possession That Will Ripen Into Title.—Where the real title holder of land is not in the actual possession of it, one without color of title entering thereon and claiming it adversely, to a well defined marked boundary, is in the actual possession of his close, and in actual possession, by construction, to the well defined marked boundary, and possession of this kind will ripen into title.

2. Adverse Possession—Possession Without Color of Title.—Where the real title holder of land is in the actual possession of it, one entering without color of title is in the actual possession of it only to the extent that he encloses it. In such case a claim to a well defined marked boundary does not avail anything.

3. Adverse Possession—Character of Possession That Will Ripen Into Title.—An element of possession, which is necessary to cause it to ripen into title, is that the true owner must have notice of the hostile claim, or the possession must be visible and notorious, so as to raise the presumption of notice to every one, that the rights of the true owner are intentionally invaded, with the purpose to assert title hostile to his title.

4. Adverse Possession—Claim Without Color of Title.—A mere claim by one without color of title, to certain water courses, cliffs and mountains for a boundary, does not amount to an adverse possession beyond the claimant's close.

J. N. SHARP and STEPHENS & STEELY for appellants.

W. R. CRESS & SON and TYE, SILER & GATLIFF for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellants, Stearns Coal & Lumber Company and Kentucky-Tennessee Property Co., filed a petition in equity against the appellees, Andrew Boyatt, Alvis Boyatt, Dr. F. M. Boyatt and Jack Absent, by which it was alleged that in the year 1855 a large tract of land containing 9,600 acres was patented to Jacob Hudson and Cyrenus Wait, and appellants were the owners of all that part of the tract which lies on the west of the Cincinnati, New Orleans and Texas Pacific Railroad, and between it and the south fork of the Cumberland River, and between the line of Kentucky and Tennessee, on the south, and the county of Pulaski, in Kentucky, on the north; and that the appellees had entered upon the lands owned by the appellants and cut poplar trees therefrom, and were actively engaged in cutting and removing the trees; that Andrew Boyatt was insolvent, and Dr. F. M. Boyatt, Alvis Boyatt and Jack Absent were non-residents of Kentucky and resided in Tennessee, and that great and irreparable injury would result to appellants unless an order was at once granted restraining the appellees from cutting and removing the trees upon the lands. By an amended petition it was alleged that appellees, Dr. F. M. Boyatt and Andrew Boyatt, had cut and converted to their own use poplar trees, which were the property of the Stearns Coal & Lumber Company, and other trees upon the lands, within three years before the filing of the petition, to the value of $600.00, and prayed for an injunction against the appellees, restraining them from any further trespasses upon the lands, and the recovery of the sum of $600.00 in damages against Andrew and F. M. Boyatt.

The appellees filed an answer and amended answer in this suit, in which they did not deny the cutting and conversion of the trees, but denied that same was done upon lands owned by appellants, and, also, plead that the lands upon which the alleged trespasses were committed were situated in Wayne county, at the time the warrant was obtained from the Whitley county court by Hudson and Wait, authorizing them to enter and have surveyed the lands for the purposes of a grant, and at the time the surveyor of Whitley county entered and surveyed the lands, and the patent was granted, and for that reason the patent to Hudson and Wait, so far as

it embraced the lands from which the trees were cut, was void. The appellants, by reply, denied the allegations as to the location of the lands in controversy at the time of the issual of the warrant, and at the time of the entry, survey and patent, and denied that the lands at that time were in Wayne county. No evidence was offered upon this issue.

The appellant, Stearns Coal & Lumber Company, filed a petition in ordinary against Alvis Boyatt, Andrew Boyatt, F. M. Boyatt and —— Ross, in which it made claim to ownership of 250 cross ties and oak logs, of the alleged value of fifty cents each, and the right to immediate possession of them and which it alleged the appellees were wrongfully in possession of and detaining from them, and prayed for a recovery of the cross ties. The appellees, by answer, traversed the petition and by an amended answer again alleged that at the time of the entry and survey, and at the time the patent was granted to Hudson and Wait, that the lands from which the cross ties were cut were then in Wayne county, and not in Whitley county, and for that reason the patent was void, so far as it embraced the lands upon which the trees were cut. The appellants, by reply, denied the allegations of the amended answer, and plead an act of the General Assembly, which had been enacted before the entry, and survey was made and the patent to Hudson and Wait was granted, and by which the territory in controversy was included in Whitley county. No rejoinder, demurrer or other pleading to the reply was filed, and hence no issue was made upon that subject. Thereafter, appellee, F. M. Boyatt, filed a second amended answer, in which he claimed that he was the owner of the lands from which the cross ties were cut, and the other trees were cut and converted by him, by adverse possession for the statutory period necessary to vest title in him, but admitted that the lands were covered by the Hudson and Wait patent. Andrew Boyatt, also, filed a second amended answer, in which he claimed that he was the owner of two tracts of land of one hundred acres each, and that he had held same adversely and claimed same as his own for the statutory period necessary to toll the appellants' right of entry, and relied upon the statutes in such cases provided as a bar to appellants' right of recovery in the action. The affirma-

tive matters in these second amended answers were, by agreement, taken as controverted of record.

In the first named action a temporary restraining order was granted, and in the second named action an order of delivery was obtained for the cross ties.

During the pendency of the action, by agreement, a special commissioner of the court was directed to sell the ties and logs under the order of delivery and on hand, which he did, and realized for them the sum of $300.00.

The two suits do not appear ever to have been consolidated or ordered to have been heard and tried together, by any order of the court, but were actually heard and decided together, as we presume, by the consent of the parties, as no objection was offered to that course in the court below and no complaint is now made of the court having taken that course. The two cases were treated by the court and parties as one case, and the pleadings treated as applying to each case, and we will so consider them.

Appellees, Alvis Boyatt and Jack Absent, do not, from the evidence offered, appear to have had any connection with the matters about which issues were made and tried, and the only charge of wrong doing against them is the allegations in the original petition, to the effect that they were trespassing upon the lands described in the petition, and these allegations were never denied, although they joined in the first answer.

By a stipulation, it was agreed that the appellants have the record title to the lands embraced by the Hudson and Wait patent, and that the lands upon which the trees and ties were cut are covered by the patent. It was also agreed that Andrew Boyatt had title and was the owner of a tract of land covered by the Martin Beatty patent.

The defense to the actions by appellees, F. M. Boyatt and Andrew Boyatt, was that each of them was the owner of the lands from which he had cut trees, and that his ownership arose from having held actual, adverse, exclusive, open and notorious possession, and under a claim of ownership for more than fifteen years prior to the actions. This was the issue submitted to the jury, which returned a verdict for Andrew Boyatt and F. M. Boyatt. The court, thereupon, rendered a judgment, by which the petitions were dismissed, and

the special commissioner directed to pay the $300.00 in his hands to F. M. Boyatt.

The grounds relied upon for a reversal are: First, the court erred in overruling appellants' motion, at the conclusion of all the evidence, to instruct the jury to return a direct verdict for them.

Second—The court erred in the instructions to the jury.

Third—The court erred in dismissing their petition in equity, and denying the injunction sought.

No complaint is made to the effect that the instructions did not substantially embrace the law, as applying to adverse possession, in a proper case, but it is contended that the evidence is not such as to justify the submission of the issue of adverse possession to the jury.

The evidence offered by appellants proved that they and their predecessors, in ownership of the lands embraced in the Hudson and Wait patent, had been in the actual possession of these lands by having tenants situated and residing upon them, at several different places thereon, attended with the intention to hold and claim the entire boundary, continuously since the year 1880, and was entirely uncontradicted. The appellants had no tenants, at any time, upon the part of the Hudson and Wait patent, which are claimed, respectively, by the appellees, but their possession of such portions, according to the well settled principles of the law, was actual by construction. This is in accordance with the well-known principle, that one residing upon land, claiming it under a deed or patent and intending to possess and hold it all, is in the actual possession of the land to the extent of the boundaries of his deed or patent, to the extent that it is not in the actual possession of another.

The appellee, F. M. Boyatt, claimed to own 100 acres of the land, and the evidence offered by him tended to prove that in 1890, Elisha Boyatt purchased it from Wm. Anderson. It does not appear that Anderson had any title to it, or made any deed to Boyatt for it. Elisha Boyatt owned and resided upon a farm adjoining the 100 acres, but in the State of Tennessee. Elisha Boyatt claimed the land under his purchase, and either he or Anderson placed and operated a stave mill upon it and manufactured some of the trees into staves. Elisha Boyatt had in his possession, at some time, some char-

acter of a writing, in which was a description of the
land, but this writing was neither produced nor ac-
counted for upon the trial, and where it came from was
not divulged. While Elisha Boyatt claimed the land, he
paid taxes upon it. There was a small piece of cleared
land upon it, adjoining the Tennessee state line, which
was enclosed. The remainder of the land was clothed
with the virgin forests. In 1892 he sold it, by parol, to
Frank Musgrove, who was desirous of engaging in the
retail whisky traffic. He erected a box house, with one
end of the house in Tennessee and the other in Ken-
tucky, upon the lands, and used it for a place for vending
liquors to the thirsty; and his family, also, occupied the
house. Musgrove cleared more of the land, kept it en-
closed and cultivated it, and sold some timber trees from
the land. After two years Musgrove sold it, by parol
contract, to Elisha Boyatt, who resided in the house
upon it for a time, and thereafter had a tenant upon it
continuously until 1909, when he sold and conveyed it
by deed to F. M. Boyatt, who had held possession of it
by a tenant ever since. This seems to have been the
first deed which was made evidencing any of the sales
of it, and this deed was not produced and the statements
in regard to it were incompetent as evidence, when the
deed was not shown. From time to time the enclosed
land upon it has been increased until there is now eight
or ten acres, and this cleared land has been cultivated
each year since 1892. About eight or ten years ago the
land was surveyed by Musgrove, and the trees along the
lines marked. At that time there was a blazed line
around it, except upon the side where the Tennessee
state line bounded it, and these blazes were numerous
and appeared to be several years old at that time. There
are marked corner trees and stones at different places
upon the lines, set up for corners. The lines are now
sufficiently marked that one can and could in 1892 follow
the lines all around and locate the land. Several years
ago the house was pushed over entirely to the Kentucky
side, and is now about ten feet from the state line. The
agent of appellants knew of Musgrove residing there,
at the time. The cleared land surrounds the house and
adjoins the state line. The appellee, upon the witness
stand, was able, from memory, to partially describe the
boundary to which he claimed.

The appellants' evidence tended to prove that the house had not been continuously occupied since its first erection, and when first erected, it was all in Tennessee, except the chimney at the north end, and that the cleared land was less in quantity than was claimed by appellees, and had not been kept continuously enclosed. The cleared strip of land alongside the house was only about eighty feet wide and about one hundred and fifty feet in length in 1893.

The cross ties sued for were cut from the land by F. M. Boyatt, and Andrew Boyatt had no connection with that transaction.

The evidence offered by Andrew Boyatt tended to prove, that in 1894, by parol, he purchased 200 acres of land from Wm. Boyatt. A deed was prepared from Wm. Boyatt to him for 100 acres of the land, but was not acknowledged nor delivered to him until in 1908, and was recorded January 17, 1908. For the other 100 acres, which adjoins the 100 acres, he says, was conveyed to him by deed, he has no deed nor writing of any kind evidencing the sale. He resided in a house situated upon the 100 acres, for which he holds a deed, from 1894, for about eighteen or nineteen years, when he moved to Tennessee. There was seven or eight acres of the land, which was cleared and fenced, when he moved upon it, and he has from time to time cleared and enclosed portions of the land since then, until there is now twelve or fifteen acres cleared and enclosed. The 100 acres, for which he does not hold a deed, has never been surveyed and there is no marked line around it, except for a distance where the line of it runs with the lines of other lands, which have a marked line. The boundaries of it are streams, cliffs, natural rocks, gaps in cliffs, and the Kentucky-Tennessee state line. There is nothing about these water courses, cliffs, natural stones and mountains which would indicate to any one, that any person was relying upon them as the boundaries of a domain, over which he claimed dominion, and would not give notice to the title holder that any one was holding or claiming to hold the lands by adverse or any other kind of a possession. The boundary to this 100 acres seems to be only a boundary in the mind of the appellee. The 100 acres, for which he holds a deed, calls for "stakes" as the corners. The appellants claim that there are 500 acres in the claim of Andrew Boyatt, instead of

200 acres. The 100 acres, for which he holds a deed, is supposed to be the lands embraced in the Martin Beatty fifty-acre patent, which was granted in 1814. The appellants concede that Andrew Boyatt is the owner of the Beatty fifty-acre survey, but introduced evidence conducing to show that only eleven acres of it are covered by the patent to Hudson and Wait, and that the deed for 100 acres really only covers thirty-six acres, and that all of the Beatty patent, except eleven acres, lies upon the west side of the south fork of the Cumberland River, instead of on the east side, as claimed by Andrew Boyatt. It is not clear from the evidence how many acres of the lands claimed by appellants are included in the Martin Beatty survey, nor whether Andrew Boyatt has enclosed any of the lands in controversy, which are not covered by the Beatty patent, and which he has had enclosed for the statutory period of limitation. He has, however, according to his admissions, been cutting and selling trees from the lands in controversy, outside of what he claims are the boundaries of the Martin Beatty patent.

Neither Andrew Boyatt nor F. M. Boyatt have any color of title to the lands claimed by them respectively, under which a claim of ownership has been made, either by them or those under whom they claim, for fifteen years before the actions were filed. The unnamed paper, which Elisha Boyatt had, if produced in evidence would not constitute color of title. Andrew Boyatt had no color of title to the 100 acres, for which he has not a deed, and neither has he a well defined marked boundary to which he claims. As to the other 100 acres, which he claims under a deed, it can not be said that a deed which has never been acknowledged nor delivered is a color of title. Even if it should amount to a color of title, it would not operate to give him an actual possession of any of the lands embraced by it, beyond the limits of the Beatty patent, as against the constructive actual possession of appellants and their predecessors in title, in the absence of an actual possession of the lands embraced by the deed and without the Beatty patent, by appellee, by having such part of the lands enclosed.

A mere "squatter" or trespasser, who enters upon lands which are then in the actual or constructive actual possession of the title holder, acquires an actual possession no further than he actually encloses the lands. If

one, without color of title, enters upon lands, of which the title holder is not in the actual or constructive actual possession, and resides upon or encloses a portion of it, and claims to be the owner of more thereof to a well defined, marked boundary, he thereby becomes in the actual possession of his close, and in the actual possession, by construction, to the well defined, marked boundary to which he claims, and is thereby in the actual adverse possession to the marked boundary, but if the true owner of the lands, at the time, is in the actual possession of the tract, by residing upon the lands or having some part of it enclosed, and claiming to the extent of his boundaries, he has already and retains an actual possession by construction of all of the tract, which the trespasser does not enclose, because one actual possession, by construction will not oust another of the same kind.

It is well settled law in this jurisdiction, that one who is without color of title, and who enters upon a tract of land, of which, at the time, the true owner is in the actual possession, the one entering without color of title does not acquire any possession of any kind of any more of the land than the portion of it which he takes physical possession of by enclosure. To claim to a well defined, marked boundary, in such a state of case, does not avail him anything. Le Moyne v. Litton, 167 S. W., 912; Le Moyne v. Meadows, 156 Ky., 832; Mounts v. Mounts, 155 Ky., 363; Kentucky Coal, etc. Co. v. Carroll Hardwood Lumber Co., 154 Ky., 523; Fuller v. Mullins, 143 Ky., 638; Meade v. Ratcliff, 133 Ky., 417; Phillips v. Beattyville Mineral and Timber Co., 88 S. W., 1058; Mann v. Cavanaugh, 110 Ky., 787; Hunter v. Chrisman, etc., 6 B. M., 465; Shackelford v. Smith, 5 Dana, 239. In many jurisdictions the possession of one without color of title and therefore a mere trespasser, bestows no right upon the trespasser at all, and inures to the benefit of the real owner of the land, but in this jurisdiction mere adverse possession, with claim of right, will, if continued the statutory period, ripen into title, and the rule, which confines the trespasser to his close, has only been relaxed to the extent of giving him actual possession by construction, to the well defined, marked boundary to which he claims, when there is no actual possession by the real title holder of the land. The same rule applies where one enters upon lands under a deed

or patent, which is inferior to the real title. If the one holding the superior title to the lands is not in actual possession, then the one entering under an inferior deed or patent, with the intent to hold the lands to the extent of his boundaries, is held to be in the actual possession to the extent of his boundaries, by construction, but if the superior title holder is already in actual possession of the tract of land, then the holder of the inferior title only acquires possession to the extent of his enclosures.

An element of possession, which is necessary to cause it to ripen into a title, is that it must be visible and notorious. The true owner must have knowledge of the hostile claim, or the possession must be visible and notorious so as to raise the presumption of notice to every one, that the right of the owner is invaded intentionally, with a purpose to assert a title adverse to his. Buford v. Cox, 5 J. J. M., 582; Auther v. Humble, 140 Ky., 56; Young v. Pace, 145 Ky., 405; Thurston v. Masterson, 9 Dana, 228. For one to simply make claim by his thoughts to a body of land, which has no other boundary than natural water courses, natural stones, bluffs, cliffs, gaps in cliffs, and mountains, as is undertaken to be done for Andrew Boyatt, would not give notice to the owner nor any one else of the claimant's intentions. The mere occasional trespassing in the way of cutting timber does not create an adverse possession. Kelly v. Bicknell, 147 Ky., 401; Muse v. Payne, 144 Ky., 30; Ramsey v. Thomas, 140 Ky., 356; Auther v. Humble, 140 Ky., 56; Combs v. Combs, 72 S. W., 8; Wait v. Grover, 12 S. W., 1068; Casky v. Lewis, 15 B. M., 27; Wilson v. Stivers, 4 Dana, 634.

Applying the doctrines here enunciated to the facts of this case it becomes readily apparent that F. M. Boyatt, nor any one under whom he claims, has ever been in the actual possession of any part of the lands he claims, beyond his actual enclosure; nor has Andrew Boyatt, nor any one under whom he claims, ever been in the actual possession of any part of the lands he claims, without the limits of the Beatty patent, beyond his actual enclosure. Nothing short of an actual possession can ripen into a title. The title of appellants being conceded, and there being no proof to support appellees' claim of ownership from adverse possession for the statutory period, the court was in error when it overruled appellants' motion to direct a verdict in their

favor, and submitted the question of the ownership of the lands to the jury, and dismissed the petition.

Upon the facts presented by the record, the suits being merely for the value of trees and not for injury to the lands, the appellant, Stearns Coal & Lumber Co., was entitled to recover of F. M. Boyatt the cross ties sued for, or their reasonable market value, and any damages suffered by it by their detention; and the reasonable market value, at the time and place, of any trees cut and converted to his own use within three years before suit was brought, from any portion of the land, which he and those under whom he claims title had not adverse possession of by an enclosure for fifteen years theretofore; and against Andrew Boyatt for the reasonable market value, at the time and place, of any trees cut and converted to his own use within three years before suit was brought, from any portion of the lands, which he and those under whom he claims had not theretofore had adverse possession of by an enclosure around it for fifteen years before suit was brought, but the recovery against both, not to exceed $600.00, and the jury should have been so directed, under proper instructions.

A judgment should have also been rendered making the injunction prayed for, perpetual as against all of the appellees, restraining them from trespassing upon the lands embraced in the boundary of lands claimed by appellants, in their petition, except such parts as appellees had acquired title to by fifteen years' adverse possession, and the portion embraced in the patent to Martin Beatty.

For the reasons indicated the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.