## George T. Stagg Company v. Frankfort Modes Glass Works.

### SAME v. W. H. LEWIS.

### SAME v. W. F. NICKLES.

### SAME v. E. A. BACON.

### SAME v. A. B. BACON.

### SAME v. SILENT WORKERS OF KING'S DAUGHTERS' CIRCLE.

### SAME v. KATE L. G. BANTA, ET AL.

### SAME v. WILLIAM EULER.

### SAME v. J. D. NUCHOLS.

### SAME v. LAURA &. WILLIAM QUARLES, ET AL.

### SAME v. LAURA QUARLES & WILLIAM QUARLES.

(Decided May 1, 1917.)

## Appeals from Franklin Circuit Court.

1. Easements—Notice.—The purchaser of land upon or over which there exists an easement of which the purchaser has notice, or the title to which is of record, takes his land subject to such easement. This applies to subterranean easements for the purpose of conducting water, gas or other like purposes, and such purchaser by the conveyance to him obtains no title or right to the use of the thing being conducted by the exercise of the easement.

2. Adverse Possession—Sufficient to Ripen Into Title.—Adverse possession sufficient to ripen into title after continuing the requisite length of time must not only be with a claim of right, but it must be visible, open and notorious. No secret or clandestine use for whatever length of time can avail the one using it.

3. Adverse Possession—Occupancy or Possession.—Where the owner of land through which or contiguous to which a water pipe line runs claimed the right by adverse user to appropriate the water by having continued to do so for more than fifteen years. Quere—Whether his appropriation is such a use as creates occupancy or possession such as is recognized by the law under the doctrine of adverse possession?

4. Adverse Possession—Use of Water—Evidence.—The testimony shows that the use made of the water by one of the defendants was a hydrant placed within the enclosure of a building and that the others tapped the pipe and constructed a hydrant not nearer than 85 feet from the road in front of the premises, and the hydrant of one of the defendants only being wholly unobstructed from the road and the evidence showing conclusively that neither the present nor any former owner of the pipe had actual knowledge of the alleged adverse use. Held, that the use by the defendants was not of that open, visible and notorious character necessary to render it adverse to the rights of the owner of the pipe so as to give the ones exercising it a permanent right to continue it.

5. Adverse Possession—Mines and Mining.—Section 2366a, Kentucky Statutes (Act of 1906), applies only to natural mineral rights and not to artificially constructed pipes or conduits for water, gas or other like purposes.

6. Easements—Exercise of Right—Injunction.—One having the right of easement in the space covered by a roadway for the purpose of laying a pipe for the conducting of water may exercise that right anywhere within that space so as not to unreasonably interfere with the use of the road by the public if a public road, or the owner if a private road, and the same as to the use of the road in repairing or reconstructing the pipe, and the owner in fee to the land covered by that space cannot enjoin the owner of the pipe from the exercise of these privileges unless the work is being done in such manner as to damage the adjoining fence or some part of the plaintiff's enclosure.

JOHN B. LINDSEY and T. L. EDELEN for appellant.

LESLIE W. MORRIS and JAMES H. POLSGROVE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing each judgment.

The appellant, George T. Stagg Company, a corporation, and plaintiff below, filed its separate petition in the Franklin circuit court against the several appellees' defendants in the first ten cases appearing in the caption, claiming to be the owner of a six-inch water pipe line running from a natural spring located about two and a half or three miles north of the city of Frankfort to the northern corporate limits of the city, and alleging

that the defendants in each of those suits who own separate lots or parcels of land through which or near which the pipe line ran had wrongfully and illegally tapped it, and were without right appropriating and using water therefrom on their respective premises, or that they were claiming the right to do so. Injunctive relief was sought against each of them to prevent those who were using the water from continuing to do so and to compel them to disconnect their respective service pipes and to abandon the use of the water.

In the suit against the defendant, Nuchols, who claims the right to the use of the water for domestic purposes, an injunction was sought to prevent him from exercising his alleged right to tap the pipe as it was claimed he was threatening to do.

The separate answers of the ten defendants denied that the plaintiff owned or held title to the six-inch water main, and claimed that each of them through whose lots it ran were the owners of it and consequently had a right to tap it. Another paragraph relied upon the fact, as therein alleged, that each defendant and those through whom he claimed had been adversely using the water and appropriating it for domestic purposes for a period of more than fifteen years next before the filing of the suit against him in such an open, notorious, hostile and adverse manner as to acquire a title or right in and to the character of use of the water sought to be enjoined.

Still another paragraph seeks to invoke the defense of champerty in that it is alleged, in each of the cases, that at the time the plaintiff acquired its alleged title to the water main in question the defendants were using the water in the adverse manner set out in the second paragraph of their respective answers. Appropriate pleadings put in issue the affirmative parts of the answers. The ten cases were consolidated in the court below, and after extensive preparation they were submitted and the trial court dismissed each of the ten petitions, and from that judgment the plaintiff prosecutes this appeal.

The eleventh and last suit in the caption was brought in the Franklin circuit court by William Quarles and wife against the appellant in the other ten cases, George T. Stagg Company, to enjoin it from laying a six-inch pipe from the Frankfort and Owenton pike up Cove Spring branch so as to connect with a pipe running from

a reservoir which is supplied with water from Cove Spring, and which spring and reservoir is now owned by the appellant, and has been owned by it and its vendors for a great number of years, the spring and a part of the ground covered by the reservoir having been acquired by its remote vendor, the city of Frankfort, in 1838.

The grounds for the relief sought by the Quarles suit are that plaintiffs therein were the owners of the land upon which the pipe was being laid, and that the appellant, in attempting to lay it at that place was doing so without the consent of the plaintiffs and was, therefore, a trespasser.

The answer denied the ownership of the ground at that place by the plaintiffs therein and asserted the defendant's right to lay the pipe at that particular place. That suit, after preparation, was heard with the other ten suits, and upon submission the court enjoined the defendant, as prayed for in the petition, and from that judgment it prosecutes an appeal, and in this court the record in the ten cases and that in the eleventh case are considered together and will be disposed of in one opinion.

We will first dispose of the questions presented by the appeal in the first ten cases. The record as to them, although large, presents but few questions, and none of them, according to our view, of very great difficulty. Much labor has been saved by an agreement found in the record to this effect:

"It is stipulated and agreed to be true, that on April 27, 1838, the date of the deed from John W. Smith to P. Swigert, &c., trustees of the town of Frankfort, to February 1, 1892, the date of the deed from the Board of Councilmen of the city of Frankfort to John T. Buckley, the city of Frankfort was the owner and in the possession of the Cove Springs and the land on which the same were and are situated, together with its appurtenances, and which are located at the head of Cedar Cove, about two miles northeast from the city of Frankfort, including the right of way for a water pipe main therefrom to the said city, and the six-inch water main mentioned in these actions was laid therein; which right-of-way extended from the reservoir enclosing said springs, westwardly down Cedar Cove Branch through the adjoining lands now claimed by the defendants, Wil-

liam Quarles and wife, to what was afterwards the land of L. Hord and wife, and now the property of Mrs. P. I. Railey,.and thence in a southwest direction through said Hord or Railey land which formerly belonged to Orlando Brown, Sr., known as Brown's bottom, and through the same in the same general course to the city of Frankfort; and that said right-of-way for said pipe line, and said pipe line are the same, the right to the use of which are in question in these actions.''

Notwithstanding this stipulation, the title of the city of Frankfort to Cove Springs, the reservoir around it, and the pipe line from thence to the northern limits of the city of Frankfort is proven by evidence in the record. It is also established by the proof that the city held that property down to February 1, 1892, when it sold all of it, consisting of about thirty-three acres of land around the springs, all of which except one acre it had acquired since 1838, to John T. Buckley,. trustee for appellant, and he, on December 28, 1899, sold and deeded the property to E. H. Taylor, Jr., Company, a corporation, and it, on the 25th day of August, 1904, by deed conveyed the property to John F. Normile, and he, on the 20th day of October, 1904, conveyed it to the appellant, who has held it continuously since that time.

In the deed from the city of Frankfort to John T. Buckley, of date February 1, 1892, in addition to convey-ing the land which the city owned around the Cove Spring and the springs themselves, there is also con-veyed ''such interest as it (the city) may own or possess in the water pipe upon and leading from said above de-scribed property to the end of the six-inch main; and hereby conveys, warrants and guarantees to the second party (Buckley), his heirs or assigns forever the right-of-way to and from said property and the right of entry and right-of-way for the purpose of laying, maintaining and repairing such water pipe and making necessary ex-cavations for putting in new pipe from said Cove Spring property to the line of L. Hord at a point near the wooden bridge on the Frankfort & Peak's Mill turnpike;'' and also ''such interest as the city may own or possess in the water pipe upon and leading from said property with guarantee to said Buckley of the right-of-way for ingress and egress, . . . . together with all and singular the privileges and appurtenances thereto belonging, or in any wise appertaining.''

In the subsequent deeds from Buckley to the appellant the same property is conveyed.

It will thus be seen that there is no room to question the title of the appellant in and to the pipe line which it claims that the defendants were wrongfully interfering with by using or threatening to use. water therefrom. That pipe line was first laid by the city directly after it acquired the Cove Springs property in 1838.  A large part of the record is taken up with proving the title of each defendant to their respective lots.  In none of the deeds from any of their vendors or remote vendors is there any effort to convey any interest in the pipe line through or adjacent to the lots except as to the defendant, Nuchols, which will later receive our consideration.

It is insisted, however, by counsel for defendants that notwithstanding there is no mention made of the pipe in their deeds that each of their conveyances had the effect in law and did as a matter of fact convey a perfect title to each of them to that part of the pipe running under or across their lots.  Upon what ground this contention can be upheld is not made clear, and we must acknowledge our inability to recognize its soundness.  All of the deeds, from the time the city acquired the property and laid the pipes, including those by which it acquired its right-of-way or easement for that purpose, down to that executed to the George T. Stagg Company, were immediately recorded in the county court clerk's office for Franklin county, and if the proof fails to show actual knowledge on behalf of all of the defendants of the ownership of the pipe as appurtenant to the use of the water from Cove Springs and the reservoir around it (which is doubtful), the records furnished constructive notice of that fact, and each of the defendants acquired the title to their respective lots  encumbered with the plaintiff's right of easement therein to have its water pipe run under the lots, and the further right in it of ingress and egress for the purpose of reconstructing or repairing the pipe.  In other words, that defendants purchased their respective rights to the servient estate subject to the dominant estate of the plaintiff growing out of its easement right.  Kamer v. Bryant, 103 Ky. 723; Muir v. Cox, 110 Ky. 560; Hurley v. Big Sandy & C. Ry. Co., 137 Ky. 216; Burke v. Trabue, idem, 580.

The next defense relied on is that the defendants in the ten first mentioned suits acquired a perfect and in-

defeasible title and right to the use of the water from plaintiff's main by using it adversely under, as they allege, a claim of right for a period of more than fifteen years immediately next before the filing of the suits against them.

At the threshold it may be seriously doubted whether the use which defendants made of the water from the main and their appropriation of its service for their purposes is such one, as applied to the character of benefits which they received from the use, as is contemplated by the doctrine of adverse usage, for it will be noted that what they each did was to not only appropriate the use of the water main, but to absolutely consume what they obtained from that use. It is easy to see that it is unlike the occupancy of a parcel of land which is not consumed in the occupancy, and the same is true with reference to the appropriation, use or occupancy of other corporeal property. Their use is more in the nature of consuming so much of the property from day to day and at each time that which was used was likewise consumed. We, therefore, say that it is by no means clear that such acts of daily trespass (for they were undoubtedly this), although persisted in for the required length of time, could under the doctrine of adverse possession ripen into a right to a continued and unmolested use. But, however this may be, we do not feel called upon under the condition of this record to determine that question for reasons which will subsequently appear.

The doctrine permitting the acquisition of title by adverse possession is based and founded upon the principle of acquiescence on the part of the true owner in the supposed adverse possession. There is no rule of law or equity or logic more firmly settled than the one requiring a knowledge of the facts acquiesced in by the one sought to be affected thereby, before he can be charged with the consequences of acquiescence. This knowledge may be either actual or presumed, but if not actual the circumstances must be such as to make it clear that the one upon whom notice is sought to be fastened must in the very nature of things have known the facts. Hence, it is stated in 2nd Corpus Juris. 75, that: "In order to make good a claim of title by adverse holding, the true owner must have actual knowledge of the hostile claim, or the possession must be so open, vis-

ible and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally and with the purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault.  The claimant must exercise such acts of ownership and occupancy as are sufficient to 'hoist his flag over the lands so that all may observe it.' A clandestine entry or possession will not set the statute in motion, and mere declarations as to title in himself by the claimant where the possession is not visible or actual amount to nothing.  The owner will not be condemned to lose his land because he has failed to sue for his property when he had no notice that it was held or claimed adversely.''

To the rule as thus laid down in the text, in addition to a great number of cases from many of the states of the Union, there is appended the following from this court: Buford v. Cox, 5 J. J. Marshall 582; Thruston v. Masterson, 9 Dana 228; Arthur v. Humble, 140 Ky. 56; King v. Eagle Coal Co., 144 Ky. 660; Young v. Pace, 145 Ky. 405, and Brown v. White, 153 Ky. 452.

An examination of these cases will show that they confirm the doctrine of the text quoted, and we do not deem it necessary to encumber this opinion with excerpts from any of them.

In the cases of Pierce v. Barney, 209 Pa. 132, and Delaware, &c. Canal Co. v. Hughes, 183 Pa. 66, 63 Amer. St. R. 743, 38 L. R. A. 826, it is held that one who secretly enters on coal through an opening in land other than that in which the coal is situated cannot obtain title to the coal by adverse possession even by continuous mining.  The character of possession which will serve to carry home to the owner knowledge of it, in the absence of actual knowledge, must be with a claim of right, and also open, visible and notorious.  The general doctrine as to the character of such possession, in order to furnish notice in the absence of actual knowledge, is well stated in the volume of Corpus Juris., *supra,* page 79, to be:

''The rule is that in determining whether possession is open, visible and notorious so as to charge the owner with notice of an adverse claim, the nature, situation and uses of the property are to be considered, and also the quantity or proportion of the land actually occupied.''

Many cases are found in the notes to this text, including the Kentucky case of Buford v. Cox, *supra*.

Touching the questions now being considered, this court, in the late case of Stearns Coal & Lumber Company v. Boyatt, 168 Ky. 111, said:

"An element of possession, which is necessary to cause it to ripen into a title, is that it must be visible and notorious. The true owner must have knowledge of the hostile claim, or the possession must be visible and notorious so as to raise the presumption of notice to everyone, that the right of the owner is invaded intentionally, with a purpose to assert a title adverse to his. Buford v. Cox, 5 J. J. M. 582; Arthur v. Humble, 140 Ky. 56; Young v. Pace, 145 Ky. 405; Thurston v. Masterson, 9 Dana 228." See also Gentry v. Piercy, 175 Ky. 174.

The principles just discussed are so thoroughly and universally established in the law that we deem it a waste of time to further discuss them.

In the brief of counsel for appellees is this statement: "We concede that William Quarles and Laura Quarles, W. F. Nickles, A. B. Bacon and Kate L. Banta, are the only ones that continuously and adversely used this water for more than fifteen years." This statement is in perfect accord with the testimony as to all of the other defendants except the ones mentioned in the statement, and even as to them the testimony raises considerable doubt as to whether they or their vendors have used the water from the pipe line under a claim of right for as much as fifteen years before the filing of the suits against them. But, accepting the statement as true in the four cases mentioned and measuring the use which those defendants each made of the water from the pipe by the rules of law hereinbefore discussed, it is perfectly plain and clear to our minds that such use was not of that character which would serve to divest the plaintiff of any of its property, or to invest the defendants or either of them with any title or right to either the water from the pipe or to continue to use it in the manner which they have heretofore done. It may be that while using it they did so under a claim of right, but in the light of the evidence there is no possible room to conclude that their use of the water was either open, visible or notorious. Neither of them, while appropriating the water from the pipe, "hoisted his flag" or "kept

it flying in a visible and hostile manner." 2nd Corpus Juris. 76; Pierce v. Barney, 209 Pa. 132; Plummer v. Hillside Coal Co., 160 Pa. 483.

As to the Quarles, it is shown that the beginning of their use of the water from the pipe was when their lessee erected a slaughter house and tapped the main with a small hydrant which was enclosed in that house where it has ever been. This, instead of being an open, visible or notorious use of the water, was an actual hiding of the use under a bushel, and could not in any manner serve to inform the plaintiff, who was the true owner of the pipe, that the water was being wrongfully or otherwise appropriated.

As to the other defendants, whose possible use has been for a period of fifteen years, while their hydrants were not enclosed in a house, none of them appears to have been located nearer a public road than about eighty-five feet, and even some of these were shifted from time to time to a greater distance from the road. As we now remember the evidence, perhaps only one of them was wholly unobstructed to persons passing along the road, and it certainly cannot be contended with any degree of plausibility that such use was sufficiently open, visible or notorious as to carry home to the true owner constructive knowledge of it in the absence of actual knowledge. It is conceded, or if not, it is established by the evidence, that neither the present owner, nor any of its officers, nor any former owner of the water main had any actual knowledge of the use of any of the hydrants whose continuance is sought to be enjoined in this case. They did have knowledge of three hydrants connected with the main, but which are not involved in this suit, and which are acknowledged to be rightfully used. We conclude, then, that the use of the water which defendants made of it, although it may have been done under a claim of right, was not of that open, visible and notorious character as to bring it within the definition of an adverse use.

The cases of McPhearson v. Thompson, 28 Ky. Law Rep. 269; Larkin v. Ryan, 25 Ky. Law Rep. 614, and Daniel v. O'Sullivan, 88 Ky. 185, relied on by appellee's counsel are not applicable to the facts of these cases. Questions concerning the acquisition of an easement for a passway were involved in those cases, and so far as the opinion deals with the right of the appellee in the

McPhearson case to acquire by adverse use title to the water flowing from the well therein involved, the record clearly established that appellee therein, and those through whom he obtained title, had openly, visibly and notoriously used and obtained the water from the well for more than fifteen years before the filing of the suit, and acknowledgedly under a claim of right. The differences between the facts in those cases and the facts presented by this record are. at once apparent. Neither do we think that the provisions of section 2366a of the Kentucky Statutes (Act of 1906), nor the opinion of this court in the case of Farnworth v. Barrett, 146 Ky. 556, applying that statute in any manner affect the questions presented by this record. That statute has reference only to mineral rights which are natural formations, and has nothing to do with artificial, subterranean easements such as pipes for the conducting of water, gas or other like purposes.

It results, therefore, that inasmuch as neither of the defendants obtained title to the water main running through their respective lots under their title papers, and that none of them have acquired title by adverse user, the only remaining question is whether the plea of champerty can prevail. What we have said disposes of this plea, for if the defendants' use of the water was not an adverse one, the purchaser of the water main by the appellant in 1904, while such use was continuing, would not be champertous. The adverse possession of the thing conveyed rendering the transaction champertous is the same character of adverse possession which is necessary to the acquisition of title. It is so stated in 6th Cyc. 869, wherein it is said:

"Adverse possession, in order to avoid conveyance, must be such as, if continued the requisite time, would ripen into title, that is, it must be actual, visible, exclusive, hostile, and in some jurisdictions under claim of title and in good faith." Daniel v. McHenry, 10th Bush 277; Johnson v. Hearst, 10 Ky. Law Rep. 622.

Aside from this, it has been determined by this court in at least three cases that the doctrine of champerty does not apply to the sale and conveyance of easements. Those cases are Hegan v. Pendennis Club, 23 Ky. Law Rep. 861; Williams v. Poole, 31 Ky. Law Rep. 757; Kevil v. Stunston, *idem,* 1000. The rule under con-

sideration as held by this court will be sufficiently illustrated by the following excerpt from the Poole case:

"This court in the case of Hegan v. Pendennis Club, 23 Ky. Law Rep. 861, decided that the champerty statute does not apply to the sale of an easement. It is further claimed by appellant that he had the alley in question inclosed, and the obstruction complained of had been erected, when appellee purchased lots one and two; and that appellee knew of the obstruction when he purchased the lots and he is estopped to ask that the same be removed. This court in Hegan v. Pendennis Club, *supra,* decided that the owner of a lot with an easement appurtenant to it could sell the same and pass a good title to both the lot and the easement, notwithstanding the easement might be in adverse possession of another. The purchaser's knowledge of such adverse possession in such cases is not material."

In attempting to justify the use of the water by the defendants, their counsel seek to invoke the rule as applicable to riparian proprietors, and insist that that rule is applicable to both subterranean and surface streams, all of which we do not dispute but heartily endorse. The distinction between natural streams, from which the doctrine of riparian rights emanates, and private property in artificial conduits is so manifest as not to require of us more than the calling of attention to the distinction between the two properties. The one is strictly private property created by and through individual enterprise for personal gain and profit, while the other is the product of nature, and which all owners of real estate through which the streams may pass, whether they be subterranean or surface ones, may appropriate the water therefrom in reasonable quantities for their individual purposes.

It results, therefore, that the court erred in adjudging the defendants the right to the use of the water and dismissing the plaintiffs' petitions in the nine cases, excluding that against the appellee, Nuckols. In that case it is shown that neither he nor any of his vendors have ever appropriated any of the water from defendant's pipe, but one of his remote vendors attempted to convey the right to do so, although the lot is not crossed by the pipe, nor is it contiguous to the pipe. It is not contended that such vendor possessed any right to make that conveyance, and clearly the conveyance itself did not even create in the vendee a color of right.

It is insisted by this defendant, however, that he obtained the right through such conveyance as appurtenant to his lot, and he insists upon his right to tap the pipe whenever he sees proper to do so. This, we think, creates a sufficient cloud upon the plaintiff's title to its easement as to enable it to obtain the injunctive relief which it seeks in that suit, or if not, then to an adjudication quieting its title as against Nuckols' alleged claim, and because neither was done it was error to dismiss the plaintiff's petition as against the defendant, Nuckols.

This leaves undisposed of the questions involved in the eleventh suit of William Quarles and wife against appellant, the nature of which has been stated in a former part of this opinion. At the place where appellant was attempting to lay the pipe at the time it was enjoined in that suit from doing so is clearly shown, according to our view of the testimony, to have been one which was formerly occupied by a public road. While such, the city of Frankfort acquired the right to and did lay its pipe in the road. The road, as a public road, was afterwards abandoned by order of the Franklin county court, but this was subsequent to the obtention of the city's right to occupy that road with its water main.

The land now owned by Quarles and wife was formerly owned by a man by the name of Russell who conveyed it to one Gaines, and although the description is sufficient to cover the old roadway, yet Russell reserved that space for a private passway in the deed to Gaines, and it is the Gaines title which Quarles and wife now hold. The road, although abandoned as a public one, has since remained open as a private passway and neighborhood or country road. So that if appellant was digging the ditch enjoined within the space of that old roadway, we fail to see wherein it was trespassing upon the property of the plaintiffs in that suit, or wherein it was engaged in that which it had no right to do. The old road at that point appears to run, and does now run, up Cove Spring branch, or at any rate where that branch now runs. This appears reasonably clear from the proof. The ditch was being dug just south of the south fence maintained by Quarles and wife in enclosing their premises. It was, therefore, outside of the fence, and there does not appear to have ever been any fence further south than the present one. We think the prepon-

derance of the evidence is that the ditch was being dug and the pipe laid within the old roadway. This conclusion is strengthened by the circumstances of there never having been a fence south of the present one, and of the ditch being dug outside of the enclosure and on the brink of Cove Spring branch. The appellant as the successor of the city, having the right to lay its pipe within such roadway at that point, it results that it was error to grant the injunction in that case.

It is true that there is a conflict of testimony upon the two points as to whether the Quarles own the fee to the land covered by the old roadway, and as to whether the ditch was being dug within the space formerly occupied by it when the city obtained its right, but we think the preponderance of the testimony is as above indicated, and under the familiar rule applicable to appeals from the finding of facts by a chancellor, we feel that we are constrained to hold that the learned judge was in error in his finding herein.

Wherefore, the judgment is reversed in each case, with directions to grant the perpetual injunctions prayed for in the ten cases filed by appellant, and to dismiss the suit filed by appellees, William and Laura Quarles, and for proceedings consistent herewith.