# Dixon v. Giles et al.

March 25, 1947.

Ira D. Smith, Judge.

S. Y. Trimble IV for appellant.

W. H. Southall for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Prior to 1887 a corporation planned to build a railroad from Gracey, Kentucky to Clarksville, Tennessee, running southwardly through Christian County. It procured rights of way by purchase and condemnation. Later the L. & N. R. R. took over, completed and operated the road.

The controversy involves a portion of the road bed as it crossed the Fox and Radford tracts (now Dixon's) a distance of about 4000 feet. Shortly before the suit instituted by appellees, Giles and eight others, Dixon erected fences, claiming title to the land, and that by abandonment, as will be later developed, he had that right. The record shows that as to the Radford tract, a life tenant had conveyed to the company an unconditional right of way with covenant of warranty. The

right across the Fox tract was condemned, a Commissioner conveying easement only. It is unnecessary to detail how titles came to Dixon or his predecessors, except to point out that as to the Fox tract, Mrs. Hettie Dixon, mother of appellant, by mesne conveyances became the owner and later acquired the 50 foot strip by deed from the State; Dixon purchased the Radford tract from remaindermen.

It was stipulated that Mrs. Dixon acquired fee simple title to the Fox land in 1933, and the chancellor's opinion correctly stated: "It may be conceded that when the railroad ceased to function and conveyed its rights to the County, it could not divest the Dixons of their right to this strip of land, which reverted to them when the railroad discontinued its line."

The railway operated until 1933 when it was abandoned, and the fiscal court agreed to take over the road bed for $3,000. Parties along the line subscribed and paid that sum and about $700 more, apparently used in improvement. In September the L. & N. conveyed to the county the entire right of way, most conveyances carrying fee simple title, but as to the Radford and Fox tracts only quit claims. For a short while after this conveyance the roadway was used as a county road. However, in 1934 the Legislature adopted it as a part of the primary system, designating it Highway No. 117. (Acts 1934, Ch. 306.) The Act provided that its construction, maintenance and control should be subject to the law creating primary roads.

If this road was what was formerly called a "State Aid" road, it lost that character by legislation in later years, particularly in 1938, KS sec. 4356-t-1 et seq., when it became by law a part of the general highway system, with complete control, maintenance and supervision in the Commission. The only order which could be construed as a record dedication was one of the fiscal court, January 1937, providing that the road be named the "Gracey-Oak Grove Road, being primary road (No. 117) established by the Acts of 1934." There is some very satisfactory proof that during intervening years the County leased a rock quarry and "rocked the road," but this seems to have been done according to the road engineer, by the State with W.P.A. aid. There is no ap-

preciable showing that after the Dixon part of the road-
way was later abandoned, anything was done by the
County to maintain this portion, nor such proceedings as
would constitute the abandoned portion a County road,
as provided by the law, relied upon by appellees to show
that the road was illegally closed. The abandonment
last mentioned came about thuswise:

In the early part of World War II, the War De-
partment established Camp Campbell, partly in Tennes-
see, partly in Christian County, with an airport about
two miles east of the boundary of Dixon's land and Pal-
myra Pike. This resulted in a closing of old 117, south-
eastwardly from the western camp line to a point near
the Tennessee line, necessitating relocation of Highway
No. 117 somewhat north, the new road leaving the old at
a point near the western boundary of Dixon's land, and
running across the Fox tract, thence southwardly. This
left the old roadway on his tracts for a distance of about
4000 feet from his west boundary to the Palmyra Pike,
and about 2 miles of old 117 between his eastern boun-
dary and Palmyra Pike, and the western line of Camp
Campbell. Mrs. Dixon was then living, and the change
necessitated the procurement from her of a right across
her northern boundary of the Fox tract, which she con-
veyed to the State, and a short time later the State in
consideration, quitclaimed to her the old 50 foot right
over that tract; her title upon her death vested in Dixon,
a brother and sister.

After the relocation, Dixon claiming title, expressed
a purpose of building fences across the strip, but upon
conference with Camp officers he was told that the Army
desired to use it for maneuvers, and he agreed. When
the Army's use had ceased some time in 1945, Dixon
erected the proposed fences, which he says were torn
down several times, but rebuilt by him; this precipitated
the instant suit by Giles and his co-plaintiffs, some few
of whom lived east of Herndon and near Howell, just
south of old 117, a short distance from new 117, and not
far distant from Palmyra Pike, which ran northward
and intersected the new highway, and not disturbed by
the change.

In the petition of plaintiffs on their behalf and oth-
ers similarly situated, it was alleged that Dixon had ob-

structed a public road, highway No. 117 leading from Gracey to Herndon, which they and the public had used for many years; "that a high school is located on the road which leads to Herndon, where a postoffice and church are located." It is not alleged that the obstruction interfered with their access to any of these places, or to or from their properties. Charging the closing unlawful they sought mandatory order requiring removal of fences, and injunction restraining Dixon from interference with their use.

The County, State and Dixon's cotenants were not made parties, and it may be reasonably inferred that neither the County nor State is interested. Dixon demurred specially and generally, both pleas being overruled. Dixon's answer controverted, and he traced, set out and relied on his title, and alleged that the road was neither a County nor public road; that some persons had torn down formerly erected fences. He asked that plaintiffs be enjoined from so doing, and from trespassing, and that he be adjudged owner of the 50 foot strip.

A reply controverted, and alleged that because Dixon or his predecessors in title had taken deed to a part of the strip while the County was exercising rights by improving, the deed was champertous. There is no merit in this plea. Geo. Stagg Co. v. Frankfort Modes Co., 175 Ky. 330, 194 S. W. 333. Plaintiffs also plead estoppel because Dixon or his predecessor stood inactively by during proceedings leading to the taking over of the road, citing in support City of Whitesburg v. Lewis, 255 Ky. 91, 72 S. W. 2d 1019, which is inapplicable, because in that case there was shown to have been an overt act of estoppel; here Mrs. Dixon was asserting her title, to some extent recognized by the County.

The chancellor did not refer to these technical pleas, but properly concluded the question to be whether or not the owner of land over which a public road had been maintained could, with the permission of the Highway Department, close the road upon abandonment. We pause to suggest that insofar as the right across the Fox farm is concerned, there was more than abandonment because of reversion, and quit claim to Mrs. Dixon; so if Dixon had a right to erect the fence on the east, it

would make little difference to plaintiffs or the public whether or not he built a fence at his western boundary.

Considerable proof was taken, much relating to the character of the road from Howell toward Herndon, before and after abandonment. There was no proof which would tend to show that the county exercised jurisdiction over' this stretch following relocation. The record contains no reference to any proceedings which would indicate a purpose of the County to treat it either as a county or public road, or an effort to acquire rights from Dixon by purchase or condemnation. Those of the plaintiffs who testified, (and there were only two) showed no appreciable inconvenience, right of access to the places named, or elsewhere. Howard and George Giles testified that they and some three or more other families (not parties) lived in the segment south and east of the intersection of the old road and Palmyra Pike near Howell, all having reasonable access to Palmyra Pike, thence a short distance to New 117. There was effort to show that at one point on Palmyra Pike at times of high water (mainly in 1937) the road was impassable, but the road engineer testified that probability of a recurrence had been removed by raising this part above flood stage. There was not shown any lack of ingress or egress to or from the properties of plaintiffs or the general public, and it may be seriously doubted that had plaintiffs undertaken to have the county open the stretch of road, their efforts would have prevailed. See Cole v. Shannon, 1 J. J. Marsh. 218, cited with approval in Wright v. Flood, 304 Ky. 122, 200 S. W. 2d 117.

Counsel for appellees in contending that the roadway in question can be closed only in the manner provided by KRS Ch. 178, cites in support Brown v. Roberts, 246 Ky. 316, 55 S. W. 2d 9; Maggard v. Breeding, 290 Ky. 201, 162 S. W. 2d 523, and McCreary County v. Roberts, 292 Ky. 527, 166 S. W. 2d 977. These cases may be differentiated, because in none of them was there any agreement between owners and Commission nor quit claim deed from the State to the title holder. Another difference is that in some, the act of obstruction cut off ingress or egress, and in one, the Maggard case, the road involved was a county road. The McCreary County case is distinguishable. There the Commission had relocated a portion of a State highway in order to elimi-

nate a railroad grade crossing, and had ordered the old road left open for travel by nearby residents. The county without notice or hearing, ordered it closed. Our conclusion was that the county could not close the road without notice or hearing as provided by Ch. 177, KRS.

Without pointing out radical changes in our road laws since the enactment of the original "State Aid" law, it is readily gathered that the intent and purpose of the progressive laws has been to put complete control, maintenance and supervision of State highways in the Highway Department. This is clearly evidenced by the statutes, and our opinion in Jefferson County v. Department of Highways, 299 Ky. 358, 185 S. W. 2d 546. It is likewise clear that Ch. 178, KRS relates solely to the alteration and discontinuance of county roads. Sec. 178.-010 defines county roads as being all public roads (outside of cities), excepting primary roads. That the complete control of State roads is vested in the Department is made clear in Department of Highways v. Current, 299 Ky. 127, 184 S. W. 2d 879, in which we specifically said, referring to Sections 178.050, 070 and 080, KRS, that they had only to do with establishment and discontinuance of county roads, and no application to highways under control of the Department. Since this portion of the old road was from the time the State took over, a part of the State system had not only been abandoned, but relinquished and became only a permissive passway, and as there is not, nor could there be at the time of suit, claim of right by prescription, Dixon had the right to close it. It follows that the judgment must be reversed with directions to set it aside and enter one sustaining appellant's prayer for injunctive relief.